Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN WHITEWATER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELECTRON HYDRO, LLC, et al. <br><br> Defendants. | NO. 2:16-cv-00047-JCC <br><br> THIS DOCUMENT RELATES TO: C16-cv-47-JCC <br><br> DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION BY AMERICAN WHITEWATER AND AMERICAN RIVERS, INC. <br><br> NOTE ON MOTION CALENDAR JUNE 18, 2021 |

Plaintiffs American Whitewater and American Rivers, Inc. (collectively, "American Whitewater") have failed to demonstrate that they will suffer irreparable injury when the Electron Hydroelectric Project ("Electron") resumes operations. Accordingly, Defendants respectfully urge the Court to deny American Whitewater's motion for a preliminary injunction, Dkt. No. 41.

DEFENDANTS' OPPOSITION TO PI MOTION   1
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

American Whitewater makes three claims of injury, none of which justifies injunctive relief: kayaking the Puyallup River; observing steelhead in the River; and activities in Puget Sound – fishing for Chinook salmon and observing Orca whales. *Id*. At most, the testimony offered by members of the two organizations relates to their standing to bring their suit. None of the claimed injuries can support the injunction that American Whitewater seeks.

### A. Kayaking the Puyallup River

Mr. Almquist, a member of American Whitewater, claims an interest in kayaking the Puyallup River, including the canyon in the bypass reach. Dkt. No. 42, Almquist Decl. ¶ 4. While this testimony may demonstrate a basis for standing, it cannot justify issuance of an injunction, and it has no bearing on the grounds for injunctive relief offered by the Puyallup Tribe.

A plaintiff seeking preliminary injunctive relief must satisfy a four-factor test by showing: (1) it is likely to suffer irreparable harm in the absence of preliminary relief; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008). The Puyallup Tribe's injunction motion is based upon the Endangered Species Act, which removes the latter three factors in the four-factor test from courts' equitable discretion." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*., 886 F.3d 803, 817 (9th Cir. 2018). But a desire to kayak the river is not protected by the Endangered Species Act.

To justify an injunction based upon Mr. Almquist's interest in kayaking, American Whitewater would have to demonstrate the presence of all four factors of the *Winter* test. They have made no attempt to do so, and so this alleged injury cannot support a preliminary injunction. Even focusing on the first element of the test, Mr. Almquist's testimony fails to demonstrate that he or American Whitewater would be irreparably harmed by Electron resuming

DEFENDANTS' OPPOSITION TO PI MOTION   2
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

operations. The hydroelectric project has been using water from the Puyallup River to generate power for more than 100 years, long before Mr. Almquist was born or American Whitewater was formed. Moreover, the water levels in the bypass reach are actually higher now year-round than they were before 1997, since Electron has been operated to maintain at least the minimum flows committed to in the Resource Enhancement Agreement with the Puyallup Tribe of Indians ("Puyallup Tribe"). *See* Dkt. 51-2, Brandt-Erichsen Decl. Ex. 2, Secs. 1.13 & 2; Dkt. 50, Fischer Decl. ¶ 54. Mr. Almquist's testimony fails to demonstrate how he or American Whitewater would be irreparably injured by resumption of those longstanding operations.

**B. Presence of Steelhead in the Puyallup River**

American Whitewater also claims that it will be irreparably injured if Mr. Almquist is not able to see young, emergent steelhead while kayaking on the Puyallup River. Dkt. 41 at 2. Very young steelhead are essentially indistinguishable from other trout, Dkt. 49, Barrett Decl. ¶ 26, making Mr. Almquist's claimed interest in seeing the young steelhead questionable at best. Putting that aside, the young fish will have left the redds before the end of August, and in the meantime there will be a sufficient volume of water in the Puyallup River to keep the redds wet while still allowing Electron to withdraw water from the river and generate power.[1] *Id.*, ¶¶ 53-73. Electron Hydro's resumption of normal water withdrawals does not threaten steelhead redds and cannot provide the basis for preliminary injunctive relief. *Id.*

"A court must find prospective relief that fits the remedy to the wrong or injury that has been established." *Salazar v. Buono*, 559 U.S. 700, 718 (2010). American Whitewater has joined the Puyallup Tribe in relying on the anomalous and ephemeral presence of steelhead redds

---

[1] The Puyallup Tribe's reply questions whether flows will be adequate to generate power while keeping redds wet, Dkt. 52 at 11-12, but does not dispute the fact that the redds will be empty in two months. The Puyallup Tribe also ignores Electron Hydro's willingness to work with the Tribe's biologists to identify redd locations and depths, so that Electron Hydro's operations do not cause the redds to be dewatered during that short time frame. Dkt. 49, Barrett Decl. ¶ 73.

DEFENDANTS' OPPOSITION TO PI MOTION  3
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

in the bypass reach, which not only can be kept adequately wet while Electron generates power, but also will be empty in two months. But even if the Court were to assume that the redds are at risk, this claimed injury cannot support the injunction that plaintiffs seek, which would prevent Electron from operating for several years until it can negotiate the terms of a Habitat Conservation Plan ("HCP") with National Marine Fisheries Service ("NMFS"), U.S. Fish and Wildlife Service ("USFWS"), the Puyallup Tribe, and other stakeholders, and wait while NMFS and USFWS complete their incidental take permitting process, *see* 50 CFR §§ 17.32(b) & 222.307, including environmental review under the National Environmental Policy Act (NEPA). *See* USFWS and NMFS, HCP Handbook, Ch. 13.[2] , .

   Electron Hydro remains committed to developing a Habitat Conservation Plan ("HCP") and obtaining incidental take permits. Dkt. 48, Spens Decl. ¶¶ 9, 14-17. However, Electron Hydro has put a priority on the physical changes needed to exclude fish from Electron precisely because of the delays inherent in developing a HCP. *Id*. That lengthy process is constrained by limited agency resources. *Id*., ¶ 5, 9. National Marine Fisheries Service ("NMFS") does not even have the resources to reinitiate ESA consultation on completion of the previously permitted spillway replacement project in time for it to be constructed this year, Dkt. 50, Fischer Decl. ¶ 49, despite NMFS having conducted a thorough evaluation of that project in 2018. Dkt. 35-5, Puyallup Tribe Ex. D. The Services' 2018 biological opinions on the Phase 1 spillway replacement project themselves were the product of a two-year process, beginning with a one year "soft" ESA consultation process followed by another year of formal consultation on a revised application. *See* Dkt. 48, Spens Decl. ¶ 14, 18-19. The combination of constrained agency resources and the need to negotiate terms with all affected stakeholders will drag out the

---

[2] USFWS and NMFS, *Habitat Conservation Plan Handbook,* ch. 13, National Environmental Policy Act (2016), available at https://www.fws.gov/endangered/esa-library/pdf/HCP_Handbook-Ch13.pdf (last visited June 14, 2021).

DEFENDANTS' OPPOSITION TO PI MOTION  4
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

HCP process.  There is no justification here for an injunction of indefinite duration that would cripple Electron Hydro's work to bring Electron into full compliance with the ESA, particularly when the resource plaintiffs seek to protect – steelhead redds formed under this year's unique river flow regime – will be empty in two months.

### C. Impact on Puget Sound Chinook Populations

American Whitewater argues that Mr. Linnemann, a member of American Rivers, would be injured if his clients cannot fish for Chinook salmon in Puget Sound or see orca whales.  Dkt. 41 at 2.  Mr. Linneman expresses concern about the impact of Electron on Chinook salmon runs in Puget Sound, Dkt. 41 at 2, but American Whitewater points to no evidence that generating power at Electron does actually have a discernable impact on Puget Sound Chinook salmon runs, or on the availability of Chinook salmon to Mr. Linnemann's clients or to orca whales.

American Whitewater at least appears to recognize that irreparable injury to Chinook must be assessed at the species level, not by harm to single individuals.  *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,* 422 F.3d 782, 796 (9th Cir.2005); *Water Keeper Alliance v. U.S. Dep't of Defense*, 271 F.3d 21, 34 (1st Cir. 2001).  However, American Whitewater has adopted the arguments of the Puyallup Tribe, which maintains that it need only show "take" of individual fish to obtain injunctive relief.  Dkt. 35 at 18-19.  That wrongly conflates the question of "take" that is subject to regulation under the ESA with the irreparable injury to a species needed to justify preliminary injunctive relief.  *See Animal Welfare Institute v. Martin*, 588 F.Supp.2d 70, 105 (D. Maine 2008), *affirmed* 623 F.3d 19 (1st. Cir. 2010) (even though every "take" invokes the ESA, it does not follow that every take constitutes irreparable injury).  If Chinook salmon populations were so low that Electron could have a discernible impacts on the number of Chinook in the Puyallup River or in Puget Sound, then NMFS should be equally concerned about the impact of harvest from recreational fishers, or indeed the substantial harvest by the Puyallup Tribe.

DEFENDANTS' OPPORTUNITY OPPOSITION TO PI MOTION   5
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

The cases relied upon by American Whitewater and the Puyallup Tribe for this proposition did not involve preliminary injunctions, and do not hold that impacts to individual members of a species are sufficient to establish irreparable harm. The central holding in *FCC v. Rosboro Lumber,* 50 F.3d 781 (9th Cir. 1995), was that a citizen suit could be used to enjoin future harm. While the case involved potential harm to a single pair of owls, the court's analysis was based on the potential effects on "wildlife" and "protected species." *See* 50 F.3d at 786 (quoting legislative history tying injunctive relief to "potentially harmed species"). It was not asked to decide whether harm to individual animals was sufficient to support a preliminary injunction. In *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018), the court's central holding was that plaintiffs need not show an extinction-level threat to demonstrate irreparable injury and obtain an injunction. 886 F.3d at 818-19. Again, the court was not asked to consider whether likely injury to individual fish was sufficient to establish irreparable harm.[3] *Marbled Murrelet v. Babbitt*, 83 F.3 1060 (9th Cir. 1996) simply reaffirms *Rosboro Lumber's* holding, following an intervening U.S. Supreme Court ruling, that a reasonably certain threat of future harm is sufficient. 83 F.3d at 1067.

American Whitewater has not offered any evidence that Electron Hydro's use of water from the Puyallup River to generate power causes a discernible impact on Puget Sound Chinook salmon populations. As a result, American Whitewater's plea for a preliminary injunction must be denied, since it failed to explain and demonstrate the causal connection between the challenged action and the alleged injury to protected species. *Pyramid Lake Paiute Tribe v. U.S. Navy,* 898 F.2d. 1410, 1420 (9th Cir. 1990); *Klamath-Siskiyou Wildlands Center v. NOAA,* 109 F.

---

[3] In its reply, the Puyallup Tribe quotes *dicta* from *Cascadia Wildlands v. Scott Timber Co.*, 715 Fed. Appx. 621 (9th Cir. 2017) regarding harm to the *plaintiffs' interest* in individual members of the species. Dkt. 52 at 6-7. There, the Ninth Circuit reversed and remanded the grant of a preliminary injunction because the district court did not find that there was a likelihood of irreparable harm. 715 Fed. Appx. at 625.

DEFENDANTS' OPPOSITION TO PI MOTION   6
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

Supp. 3d 1238, 1238 (N.D. Cal. 2015). An expression of concern about impacts on Chinook populations, Dkt. 41 at 2, is in no way proof that they will occur. To the contrary, Electron's trap and haul operations are effective in capturing fish from the forebay and returning them to the Puyallup River. Dkt. 49, Barrett Decl., ¶ 32. A plaintiff must show irreparable injury is *likely* in the absence of an injunction; a "possibility" of irreparable harm cannot support an injunction. *Winters,* 555 U.S. at 22. The evidence offered by American Whitewater does not even approach the required showing.

### D. American Whitewater's Joinder in the Puyallup Tribe's Argument

American Whitewater relies upon the Puyallup Tribe's preliminary injunction motion, Dkt. 35, for the remainder of its argument. Dkt. 41 at. Defendants have already fully responded to those arguments, Dkt. 47, and that response is equally applicable to American Whitewater's motion.

### **Conclusion**

Electron Hydro's resumption of water diversion and power generation will not irreparably injure any of the interests advanced by American Whitewater. Defendants respectfully urge the Court to deny the motion, for the reasons set out above and in their opposition to the Puyallup Tribe's motion. *See* Dkt. 47 and supporting declarations.

Dated this 14th day of June, 2021.

> *s/ Svend Brandt-Erichsen*
> Svend Brandt-Erichsen, WSBA # 23923
> NOSSAMAN LLP
>
> *Attorney for Defendants*

DEFENDANTS' OPPOSITION TO PI MOTION   7
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

*s/ Svend A. Brandt-Erichsen*
Svend A. Brandt-Erichsen

DEFENDANTS' OPPOSITION TO PI MOTION
BY AMERICAN WHITEWATER
CASE NO. 2:16-cv-00047-JCC

8

NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
(206) 489-5633 (Phone)
(206) 489-5501 (Fax)